*John Stites, for appellant.*

---

HENRY DUGAN'S ADMR., ET AL. *v.* PHOCIAN HARRIS.

[Abstract Kentucky Law Reporter, Vol. 6—597, 599.]

**Plea of Non Est Factum.**

A plea of non est factum which merely alleges that the pleader has no knowledge or information as to the execution of a written instrument is insufficient as such plea. The plea of non est factum must be affirmative in character.

**Receipt of Settlement Not Conclusive.**

A receipt in settlement is not conclusive but may be explained, varied or contradicted by the testimony. It is but prima facie and where given and accepted between persons bearing confidential relations, should be closely scanned.

APPEAL FROM DAVIESS CIRCUIT COURT.

February 26, 1885.

OPINION BY JUDGE HOLT:

The administrator with the will annexed of Henry Dugan brought this action against the administrator and heirs of Phocian Harris to settle the estate of last named decedent, and to recover the

amount that had been collected by him upon certain notes belonging to the Dugan estate, and which the executor had placed in his hands for that purpose. The petition also alleges that the money so collected had been invested by Harris in the purchase at an execution sale on May 12, 1873, of what was known as the Veach land and that therefore the plaintiff had an exclusive and superior lien upon it for the payment of his claim.

It seems that it was a matter of dispute whether Dugan died a resident of Daviess or Warren county. His will was probated in Warren county, and G. M. Murrell, who was named in it as executor, qualified in the last named county; while the county court of the first named county committed the estate to the hands of its public administrator, Henry W. Scott, who is the plaintiff in this suit; but there can be no question as to his right to maintain it, because said G. M. Murrell having died and his widow Sallie D. Murrell, who next became the personal representative, having also died, the plaintiff before bringing the action qualified in the Warren county court as the administrator.

The defense to it in brief is that Harris paid over to Sallie D. Murrell, while she was the administratrix, the money he had collected and settled the whole matter with her, and that he bought the Veach land for himself and with his own money. It appears that the notes on account of which this suit was brought, save one on Ray and Hathaway, were placed in Harris' hands for collection by the executor, G. M. Murrell, and a receipt given therefor by Harris; that the one on Ray and Hathaway together with other notes, that had belonged to the testator, were also placed in Harris' hands for a like purpose by Sallie D. Murrell, when she was the administratrix, that the entire estate belonged to her as devisee under Dugan's will, save two specific bequests, which the testimony tends to show have been paid; and that the estate had become greatly involved and in danger of insolvency by reason of Dugan having been surety upon an administrator's bond.

In support of the defense two receipts, purporting to have been given to Sallie D. Murrell by Harris were pleaded, one of which seems to have been given for the claims, she as administratrix, had placed in his hands and in full therefor, and which recites that he had theretofore remitted to her the collections he had made, and

delivered to her the uncollected claims, while the other receipt reads thus: "Received in full of Phocian Harris all notes and monies in his hands belonging to myself or to the estate of Henry Dugan (deceased) up to this date December 27, 1873. Sallie D. Murrell."

The reply alleges a want of knowledge or information as to their execution, but this is insufficient, as the plea of non est factum must be an affirmative one; it also alleges, that if the money was ever paid over, it was only by investing it in the Veach land for Sallie D. Murrell; and that the receipts were executed to cover up and hide the fund in order that it might escape liability arising from the said suretyship of Dugan. If, however, the land was held in trust for Mrs. Murrell, then only her heirs could maintain an action for it, and the conclusion we have reached as to whether Harris accounted for what he had collected, renders it unnecessary to notice the purchase of the Veach land further than to determine whether the money collected by Harris was used in paying for it with the intention or agreement that it should in fact belong to Mrs. Murrell, and that he never otherwise accounted for the money; because if this be so, and the receipt was given by Mrs. Murrell upon the idea that the land was to belong to her, then there never was in fact any payment by Harris, because the land was purchased in his name and since his death has been conveyed to his heirs.

In our opinion, however, the testimony does not support this view of the matter. It is suggested that it is singular, that both receipts are of the same date and yet the body of them should have been written with a different pen and in a different kind of ink, as seems from an inspection of the originals; but although their genuineness was not sufficiently denied, yet it is proven, and in fact conceded by appellants' counsel; and the claim that they were executed because Mrs. Murrell was to have the Veach land is unsupported by the testimony.

It is true one witness testifies that Harris in speaking of the land, said that he hoped to save that much for Mrs. Murrell out of the Dugan estate, and that he spoke of collecting money for the Dugan estate to pay for it, but this same witness says that Harris said at the same time, that he bought the land intending to let Mrs. Murrell have it, "if she could pay him what he gave for it." Testimony

purporting to detail conversation that occurred years before, should, however honest the witness may be, by no means be regarded as conclusive as to a matter the truth of which is contradicted by other evidence. This same witness says that one of the debts Harris spoke of collecting was upon one Carlin when the testimony clearly shows that it was collected prior to January 1, 1873, and the land was not sold until May 12, 1873.

It is shown by the testimony that it was bought in Harris' name; that he executed a sale bond; that he was financially able to buy it; that he and another party had agreed to buy it together if he did not succeed in raising the money; that this was not done because he borrowed the greater portion of the money to pay for it and that it had not been repaid at the time of his death; and at least two witnesses testify positively that he purchased it for himself and paid for it with his own money; and that they detail circumstances the knowledge of which apparently enables them to so state. Besides it is hardly probable that Mrs. Murrell, however trustful she may have been, but who seems to have been an intelligent woman, would have given the receipts, if she was to have the Veach land, without taking some writing to evidence it.

It is quite probable that Harris intended that she should have the benefit of any profit that might arise from a re-sale of it, but the evidence fails to show that he purchased it for her or with the money of the Dugan estate. The question then arises whether he paid over the money that he collected.

To refute the claim that he did so, testimony is offered showing that Mrs. Murrell lived with her father-in-law without charge and that she had little need of money and was economical; and that at her death so far as known, she had no money.

Upon the other hand the receipt is presented. It is true that it is not conclusive. It may be explained, varied, contradicted by the testimony and owing to the evident fact that Harris was Mrs. Murrell's confidential adviser and in whom she placed unbounded trust, the transaction should be closely scanned but it prima facie established payments and unequivocal testimony is necessary to overturn it.

It is moreover supported by circumstances. It appears that some time during the dispute as to which county court had jurisdiction

over the estate, Harris was curator for a short time; and that upon a settlement of his accounts the estate fell in debt to him to the extent of about four hundred dollars; and it is not shown that this has ever been settled, unless it was in the settlement when the receipts were given. It is evident that at various times prior to this date, Mrs. Murrell wanted money whether she actually needed it or not; she was urging the collection of the notes and visited Harris' house for that purpose; and it is proven by Joseph King that she went there to get money, she was there when the receipts were given. The letters from Harris to her show that he was remitting money to her; and that of July 14, 1873, shows that her son who was extravagant and thriftless was either getting money from her or from Harris.

The receipt signed by Mrs. Murrell is also supported, at least slightly, by the filing by appellee of what purports to be the receipt that Harris gave to G. M. Murrell for the notes when he received them for collection and which it is claimed was surrendered to him when Mrs. Murrell gave him the receipt of December 27, 1873. It is true that Samuel Murrell testifies, that he had this receipt and in a settlement with Mrs. Murrell as to G. M. Murrell's matters, he wrote her receipt to him as to certain matters upon the back of it, and that he retained it and has lost it; but the witness was eighty-five years old, and it is probable his recollection was honestly faulty as to keeping it and that he in fact gave it to Mrs. Murrell, and that she surrendered it to Harris.

If the testimony left the question of payment in equipoise, it being one of fact, we should hesitate to disturb the judgment of the lower court, but a careful review of the evidence has satisfied us that the judgment is correct and it is therefore affirmed.

Judgment *affirmed.*

*G. W. Williams, Eli H. Brown, for appellants.*

*W. N. Sweeny & Sons, for appellee.*